## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF MISSISSIPPI
## WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | |
| v. | Civil No.    5:18-cv-19-DCB-MTP |
| JEREMIAH FRANKLIN, individually and d/b/a J PRO TAX SERVICES, | |
| Defendant. | |

## COMPLAINT FOR PERMANENT INJUNCTION

Plaintiff, the United States of America, alleges as follows:

1.      The United States brings this complaint to enjoin Jeremiah, also known as Jeremy, Franklin ("Franklin"), doing business as J Pro Tax Services ("J Pro"), and any entity through which he conducts business, and all persons and entities in active concert or participation with him, from preparing or filing, or assisting in the preparation or filing of, any federal tax return for any other person or entity.

### Jurisdiction and Venue

2.      This action has been requested by a delegate of the Secretary of the Treasury, and commenced at the direction of a delegate of the Attorney General of the United States, pursuant to the provisions of 26 U.S.C. §§ 7402, 7407, and 7408.

3.      Jurisdiction is conferred on the Court by 28 U.S.C. §§ 1340 and 1345, and 26 U.S.C. § 7402(a).

4.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Franklin currently resides, operates his business and prepared returns in this district.

1

5. Franklin has conducted business from his office at 602 Pearl River Ave in McComb, MS 39648 or home at 4616 S. Dixon Lane in Liberty, MS 39645.

**Franklin's Tax Return Preparation Activities**

6. Franklin is a high school graduate and attended junior college for one semester.

7. Franklin has had no formal training as a tax return preparer, yet he has prepared federal income tax returns since 2008.

8. Franklin's only return reparation training consists of a course he attended offered by Refund Advantage relating to the tax refund products he uses. Refund Advantage sells financial products that allow electronic return originators to receive payment of their preparation fees from their customers' federal tax refunds.

9. Franklin operated J Pro Tax Services as a sole proprietorship to prepare tax returns for customers. Neither Franklin nor J Pro Tax Services has hired employees to aid with tax return preparation.

10. Franklin received payment of his fees primarily through the products offered by Refund Advantage, deducting his preparation fee from his customers' federal tax refunds. Franklin charged his customers between $100 and $600 to prepare each federal income tax return.

11. Franklin applied for and obtained a Preparer Tax Identification Number ("PTIN") from the IRS. The IRS requires PTINs for anyone who prepares or assists in preparing federal tax returns for compensation.

12. Franklin applied for and obtained an Electronic Filing Identification Number ("EFIN") from the IRS. The IRS requires EFINs for any business that files federal tax returns electronically.

2

13.     Franklin is a tax return preparer as defined by 26 U.S.C. § 7701(a)(36).   He prepared other people's Forms 1040 (U.S. Individual Income Tax Return) for compensation at least between 2008 and 2014.

14.     For tax years 2009 through 2013, Franklin filed the following number of returns:

| Tax Year | Returns Filed per IRS Records |
|----------|-------------------------------|
| 2009     | 167                           |
| 2010     | 196                           |
| 2011     | 198                           |
| 2012     | 169                           |
| 2013     | 182                           |

15.     From 2008 through at least 2012, Franklin failed to sign the federal income tax returns he prepared, failed to provide his PTIN on the federal income tax returns he prepared, and failed to provide his EFIN when filing the federal income tax returns he prepared, making his preparer activity more difficult to track.   For the returns he prepared and filed not listing his EFIN, Franklin used the EFIN of Joe Robinson, an acquaintance.

**Franklin's Unlawful Tax Return Preparation Practices**

16.     Franklin prepared, for paying customers, federal income tax returns (IRS Form 1040) typically containing fabricated Schedule C (Profit or Loss from Business – Sole Proprietorship) losses, false tax credits, false Schedule A (Itemized Deductions) deductions, and fabricated dependents generating improper refunds and credits, including the Earned Income Tax Credit ("EITC") for his customers.   The Earned income Tax Credit is a refundable tax credit for working people who earn low to moderate incomes.   Franklin also prepared at least one return

3

for a taxpayer without that taxpayer's knowledge, via identity theft ("ID theft"), with the return reporting a fraudulent EITC.

**Fabricated Schedule C Business Income and Expenses**

17. Individual taxpayers who operate a business as a sole proprietorship must report the business' income and expenses on a Schedule C that is filed as part of the taxpayer's Form 1040. The net figure reported on a Schedule C, whether a profit or a loss, is a component of the taxpayer's adjusted gross income (along with any wage income, interest income, etc.).

18. Franklin continually and repeatedly prepared federal income tax returns that included a fictitious Schedule C for customers. By fabricating businesses and losses, Franklin understated the customers' taxable income and reduced the amount of tax owed to the IRS, or overstated customers' refunds.

19. Franklin's practice of manipulating the customers' income through fabricated Schedule C businesses, profits, or losses served an additional purpose: it unlawfully rendered customers eligible for the EITC and/or maximized the EITC amount that he claimed for customers.

20. For customers whose actual income is too low to otherwise qualify for the maximum EITC, Franklin reports profits from the fake businesses on the Schedule C.

**Bogus Earned Income Tax Credits**

21. Franklin repeatedly prepared tax returns that included bogus claims for the EITC. The amount of the ETIC available per taxpayer is based upon the taxpayer's income, filing status, and number of claimed dependents. Because the EITC is a refundable credit, claiming it can reduce a taxpayer's federal tax liability below zero in certain circumstances, thereby entitling the taxpayer to a payment from the United States Treasury.

4

22.     Due to the method used to calculate the EITC, an individual can claim a larger EITC by claiming multiple dependents and, for certain income ranges, individuals with higher earned income are entitled to a larger credit than those with lower earned income.  The amount of the credit increases as income increases between $1 and $13,650, and decreases as income increases beyond $17,830.  Some tax preparers who manipulate reported income to maximize the EITC refer to this range of earned income corresponding to a maximum EITC as the "sweet spot."  For tax year 2014, the maximum EITC was $6,143 and was available to eligible individuals with three dependent children who earned between $13,650 and $17,830.

23.     Franklin falsified the information reported on customers' tax returns as necessary to claim the maximum EITC for his customers.  For example, to bring a customer's adjusted gross income within the EITC "sweet spot," Franklin concocted businesses that he reported on a customer's Schedule C with corresponding profits or losses as necessary to increase or decrease the customer's taxable income.

24.     For tax years 2009-2013, at least 648 of the income tax returns prepared by Franklin, or over 71%, showed a refund.  At least 672 of these returns, or over 73%, claimed the EITC.

25.     The IRS audited 58 tax returns from tax years 2011 through 2013 from 29 of Franklin's customers.  Of those returns examined, all had tax deficiencies and 46 contained disallowed Schedule C items.

**False Education Credits**

26.     Franklin repeatedly reported false education expenses and falsely claimed education-related credits, such as the American Opportunity Credit and Lifetime Learning Credit, on customers' tax returns.  The American Opportunity Credit is a refundable credit that

5

reduces taxable income and entitles taxpayers who do not owe taxes to receive a payment from the government of up to $1,000.  The Lifetime Learning Credit is a nonrefundable credit of up to $2,000 available to offset the costs of higher education by reducing the amount of tax owed by a taxpayer.

27.     By claiming education credits for customers who did not actually attend college during the tax year at issue (if ever) and had no qualifying education expenses, Franklin unlawfully reduced his customers' tax liabilities and generated larger refunds.

### False Schedule A Deductions

28.     Franklin repeatedly falsified itemized deductions on customers' Schedules A, such as employee business expenses and mortgage points.  Taxpayers may deduct ordinary and necessary unreimbursed employee expenses paid or incurred during the tax year for carrying on the trade or business of being an employee.  Mortgage points are prepaid interest and may be deductible as mortgage interest.

29.     By claiming deductions to which customers were not entitled, Franklin fraudulently decreased the amount of customers' taxable income reported on their tax returns.

30.     Of the 58 tax returns examined for Franklin's customers between tax years 2011 and 2013, 32 contained false Schedule A deductions, for items such as fictitious unreimbursed employee expenses, mortgage points, and medical expenses.

### False Claims of Dependency Exemptions

31.     Franklin continually claimed false dependents on customers' tax returns.

32.     In falsely reporting dependents on customers' tax returns, Franklin inflated dependency exemptions, which further offset taxable income.

16235655.1

**ID Theft**

33.     Franklin obtained at least one taxpayer's name and Social Security number and filed a federal income tax return, without his knowledge or authorization, showing an EITC and modest wages.  This taxpayer was incarcerated during the tax period for which this return was filed and did not receive a copy of the return filed using his information or the refund falsely claimed on the return.

**Fraudulent Returns Filed by Franklin**

*Returns Prepared for Customers*

**<u>Customer 1</u>**

34.     Franklin prepared and filed the 2008, 2009, and 2010 Forms 1040 for Customer 1. Franklin reported fabricated business income and expenses on the Schedule C included with Customer 1's 2010 return.  Customer 1's business did not have any revenue in 2010, and she did not tell Franklin that her business had any revenue in 2010.  Customer 1 did not have any expenses for insurance, taxes and licenses, cell phone bills for her business in 2010.  Customer 1 did not provide Franklin with any documents showing gross receipts or expenses supporting the gross receipts and expenses claimed by Franklin on her 2010 Schedule C.

35.     Franklin improperly reported a depreciation expense in the amount of $9,333 on Customer 1's 2010 Schedule C.  Although Customer 1 did have a car and computer in 2010, Franklin never asked Customer 1 for necessary information in order determine whether the car and computer were eligible for depreciation, specifically when they were purchased and placed into service in a trade or business.

36.     Franklin filed Customer 1's 2010 return fraudulently claiming a $1,136 EITC based on the fictitious Schedule C loss included by Franklin on the return.  Franklin filed

16235655.1

Customer 1's 2010 return claiming a refund of $4,506.

37.     Franklin deducted his preparation fees for Customer 1's 2009 and 2010 returns from Customer 1's respective refunds.

38.     Franklin failed to include his name, PTIN, or EFIN on Customer 1's 2010 return.

39.     The IRS' audit of Customer 1's 2010 return resulted in an income tax deficiency of $2,779.

**Customer 2**

40.     Franklin prepared and filed the 2009 and 2010 Forms 1040 for Customer 2. Franklin reported fabricated business income and expenses on the Schedules C included with Customer 2's 2009 and 2010 returns.  Franklin reported gross receipts of $945 and total business expenses of $12,010 for Customer 2's 2009 Schedule C.  Franklin reported gross receipts of $1,927 and total business expenses of $13,703 for Customer 2's 2010 Schedule C.

41.     Although Customer 2 did have a business selling purses and jewelry in 2009 and 2010, she did not convey any information to Franklin concerning gross receipts or expenses of the business.  Customer 2 did not give Franklin any documents supporting the gross receipts or expenses he reported on her 2009 and 2010 Schedules C.  Customer 2 did not incur business vehicle expense of $4,010 or depreciation of $8,000 during 2009.  Customer 2 did not incur insurance expense of $3,283 or depreciation of $10,420 during 2010.

42.     Franklin improperly claimed an EITC of $2,731 on Customer 2's 2009 return and an EITC of $2,750 on Customer 2's 2010 return.

43.     Franklin prepared and filed Customer 2's 2009 return claiming a $5,924 refund for which she was not entitled.  Franklin prepared and filed Customer 2's 2010 return claiming a $6,119 refund for which she was not entitled.

16235655.1

44.     Franklin did not review the 2009 or 2010 returns with Customer 2.

45.     Franklin failed to include his name, PTIN, or EFIN on Customer 2's 2009 and 2010 returns.

46.     The IRS' audit of Customer 2's 2009 return resulted in an income tax deficiency of $2,976.

47.     The IRS' audit of Customer 2's 2010 return resulted in an income tax deficiency of $3,187.

**Customer 3**

48.     Franklin prepared and filed the 2010 Form 1040 for Customer 3.   Franklin reported a deduction for fabricated charitable contributions in the amount of $1,475 on the Schedule A included with Customer 3's 2010 return.   Customer 3 did not make charitable contributions in that amount during 2010 nor did Customer 3 tell Franklin that he made charitable contributions in that amount during 2010.

49.     Franklin improperly reported, as an unreimbursed employee business expense, mileage deductions in the amount of $5,957 on the Schedule A included with Customer 3's 2010 return.   Customer 3 told Franklin about the miles he drove back and forth to work, however Franklin improperly reported those commuting miles as deductible on the Schedule A.

50.     Franklin claimed a refundable education credit of $771 derived from fabricated education expenses of $1,927.   Customer 3 did not tell Franklin that he incurred any such education expenses.

51.     Franklin filed Customer 3's 2010 return claiming a refund of $2,519 to which the customer was not entitled.

52.     Franklin deducted his preparation fee from Customer 3's refund.

9

53.     Franklin failed to include his name, PTIN, or EFIN on Customer 3's 2010 return.

54.     The IRS' audit of Customer 3's 2010 return resulted in an income tax deficiency of $2,211.80 for 2010.

**Customer 4**

55.     Franklin prepared and filed a 2010 Form 1040 for Customer 4.  Franklin reported a fabricated insurance expense of $386 and fabricated depreciation of $7,833 on the Schedule C included with Customer 4's 2010 return.  Customer 4 did not tell Franklin he had insurance expenses related to his business in 2010 and did not have property eligible for depreciation in 2010.  Franklin did not discuss depreciation or the eligibility requirements for depreciation with Customer 4.

56.     Franklin improperly reported qualified education expenses of $1,103 on Customer 4's 2010 return and, based on the expenses reported, claimed a fraudulent $441 refundable education credit.  Customer 4 graduated high school in 1969 and has no formal post high school education.  Customer 4 did not incur any education expenses in 2010 and did not tell Franklin that he did.

57.     Franklin falsely reported $4,146 in unreimbursed employee vehicle expense on the Schedule A included with Customer 4's 2010 return.  Customer 4 did not have unreimbursed employee business expenses for his vehicle during 2010 and did not tell Franklin that he did.

58.     Franklin filed Customer 4's 2010 return claiming a refund of $2,927 to which Customer 4 was not entitled.

59.     Franklin failed to include his name, PTIN, or EFIN on Customer 4's 2010 return.

60.     The IRS' audit of Customer 4's 2010 return resulted in an income tax deficiency of $2,761.

10

**Customer 5**

61.     Franklin prepared and filed a 2010 Form 1040 for Customer 5.  Franklin included a fabricated Schedule C showing income of $9,589 with Customer 5's 2010 return.  Customer 5 did not own or operate any Schedule C business in 2010 and did not tell Franklin that she did. According to Customer 5, she earned less than $5,000 in 2010.

62.     Franklin, based on the aforementioned fabricated Schedule C income, fraudulently claimed a $3,035 EITC on Customer 5's 2010 return.

63.     Franklin filed Customer 5's 2010 return showing a $2,967 refund and charged her a preparation fee of roughly $120.

64.     Franklin failed to include his name, PTIN, or EFIN on Customer 5's 2010 return.

65.     The IRS' audit of Customer 5's 2010 return resulted in an income tax deficiency of $2,967.

**Customer 6**

66.     Franklin prepared and filed a 2010 Form 1040 for Customer 6.  Franklin claimed reported fictitious education expenses of $844 and a fraudulent refundable education credit of $338 on Customer 6's 2010 return.  Customer 6 has not attended school since 1993.  Customer 6 did not tell Franklin that she incurred qualified education expenses during 2010.

67.      Franklin improperly claimed the additional child tax credit of $1,000 on Customer 6's 2010 return.  Customer 6 was only entitled to claim the additional child tax credit of $687.

68.     Franklin failed to include his name, PTIN, or EFIN on Customer 6's 2010 return.

69.     The IRS' audit of Customer 6's 2010 return resulted in an income tax deficiency of $651.

11

**Customer 7**

70.     Franklin prepared and filed a 2010 Form 1040 for Customer 7.  Franklin reported unreimbursed employee vehicle expenses of $4,971 on the Schedule A included with Customer 7's 2010 return.  Customer 7 did not incur $4,971 in vehicle expenses during 2010 and did not tell Franklin that he did.

71.     Franklin did not review Customer 7's return with him.

72.     Franklin filed Customer 7's 2010 return showing a refund of $1,959 to which Customer 7 was not entitled.  Franklin charged Customer 7 a preparation fee of $100.

73.     Franklin failed to include his name, PTIN, or EFIN on Customer 7's 2010 return.

74.     The IRS' audit of Customer 7's 2010 return resulted in an income tax deficiency of $2,090.

**Customer 8**

75.     Franklin prepared 2011 and 2012 Forms 1040 for Customer 8.   Franklin improperly reported Customer 8's brother as a dependent on Customer 8's 2011 return. Customer 8 told Franklin to report her daughter, not her brother, as her dependent.

76.     Franklin improperly reported Customer 8's filing status as head of household. Customer 8 was ineligible for head of household filing status.

77.     Franklin improperly reported wages of $10,004 on Customer 8's 2011 return. According to Customer 8's 2011 Form W-2, she had wages of $2,441 during the 2011 tax year.

78.     Using Customer 8's improperly inflated income and incorrect filing status, Franklin improperly claimed an EITC of $3,094 on Customer 8's 2011 return and a refund of $4,094 to which the customer was not entitled.

79.     Franklin failed to include his name, PTIN, or EFIN on Customer 8's 2011 return.

12

**Customer 9**

80.     Franklin prepared and filed 2011 and 2012 Forms 1040 for Customer 9.  Franklin improperly reported Customer 9's brother as a dependent on his 2011 return.  Customer 9 did not provide Franklin with information to support reporting his brother as a dependent for his 2011 return.

81.     Franklin filed Customer 9's 2011 return claiming a refund of $2,695 to which Customer 9 was not entitled.

82.     Franklin failed to include his name, PTIN, or EFIN on Customer 9's 2011 return.

83.     The IRS' audit of Customer 9's 2011 return resulted in an income tax deficiency of $3,670.

84.     Franklin improperly reported Customer 9's brother as a dependent and qualifying child for EITC purposes on Customer 9's 2012 return.  Customer 9's brother did not live with him in 2012, thus he was not a dependent or qualifying child for EITC purposes of the EITC. Franklin, in reporting Customer 9's brother as a qualifying child on his 2012 return, fraudulently claimed a $2,678 EITC on Customer 9's 2012 return.

**Identity Theft Return**

85.     Franklin prepared and filed a 2011 Form 1040 using the name and SSN of Taxpayer 1, who was incarcerated at the time.

86.     Franklin filed the bogus return claiming another incarcerated individual, Taxpayer 2, as a dependent brother.

87.     Taxpayer 2 was incarcerated during 2011 and was ineligible to be a dependent.

88.     Franklin filed the bogus 2011 return claiming wages of $7,402, a $2,525 EITC, and a $2,525 refund.

13

89.     Taxpayer 1 was incarcerated in 2011 and could not have earned wages during that tax year.

### Harm Caused by Franklin

90.     Franklin's tax return preparation business has harmed his customers, the United States, and the public.

91.     Franklin has harmed his customers by charging fees for the preparation of accurate tax returns while preparing tax returns with fabricated or exaggerated items that understate customers' tax liabilities and claim refunds to which the customers were not entitled. In doing so, Franklin has caused his customers to incorrectly report their federal tax liabilities and underpay their taxes.  The IRS has audited many of these customers who face significant tax deficiencies from the adjustments and may be liable for sizeable penalties and interest.

92.     Franklin harmed at least one taxpayer by using his identity to prepare and file a return with false tax attributes to claim a refund to which he was not entitled.  This activity prevents taxpayers from filing accurate returns for themselves and increases tax administration and enforcement costs for the United States.

93.     Franklin's conduct harms the United States by the loss of substantial tax revenue. Franklin consistently underreported customers' tax liabilities and claimed bogus refunds on behalf of his customers.  The IRS audited a total 58 tax returns Franklin prepared for 29 customers.  These 59 examinations resulted in a total tax deficiency of $244,856 or an average deficiency of $4,222 per return.  Franklin prepared and filed 912 returns for tax years 2009 through 2013, so the total revenue loss caused by Franklin is likely far greater and could be as much as $3,850,464.

94.     Franklin's unlawful practices further harm the United States because the IRS must

14

devote its resources to investigating his activities.  The IRS expends time and resources to ascertain Franklin's customers' correct tax liabilities, recover any refunds erroneously issued, and collect any additional taxes and penalties.

95.     In addition to the direct harm Franklin caused by preparing flagrantly false returns that understate his customers' tax liabilities and inflate their refunds, Franklin's activities undermine the public confidence in statutory credits meant to encourage low-income workers with young children to maintain employment and attain higher education.  Franklin's activities undermine the administration of the federal tax system and encourage non-compliance with the federal tax laws.  Franklin also undermines his customers' knowledge of proper tax preparation practices by failing to review or explain entries on his customers' tax returns.

96.     Franklin's illegal conduct also harms honest tax return preparers because by preparing tax returns that unlawfully inflate his customers' refunds, Franklin gains an unfair competitive advantage over tax return preparers who prepare returns in accordance with the law.  Customers who are satisfied with the tax refunds that they receive but are often unaware of Franklin's illegal return preparation practices returned to Franklin's store for subsequent tax seasons.

97.     Given the seriousness and pervasiveness of Franklin's illegal conduct and that he has operated his business this way since at least 2008 without remorse, Franklin is likely to continue preparing false tax returns for customers unless he is enjoined.  An injunction will serve the public interest by putting a stop to Franklin's illegal practices and the extensive harm resulting therefrom and ensure that if Franklin prepares returns in the future, the court can address that through its power of civil or criminal contempt.

16235655.1

## COUNT I – Injunction under 26 U.S.C. § 7407

98.     The United States incorporates by reference the allegations in paragraphs 1 through 97.

99.     26 U.S.C. § 7407 authorizes a court to enjoin a tax return preparer from engaging in conduct subject to penalty under 26 U.S.C. §§ 6694 or 6695 when that injunctive relief is appropriate to prevent the recurrence of the conduct.  Additionally, if the court finds that a preparer has continually or repeatedly engaged in such conduct and that a narrower injunction (*i.e.* prohibiting only such specific conduct) would not be sufficient to prevent that person's interference with the proper administration of the internal revenue laws, the court may enjoin the person from further acting as a tax return preparer.  The prohibited conduct justifying an injunction includes, among other things, the following:

A.   Engaging in conduct subject to penalty under 26 U.S.C. § 6694(a), which penalizes a return preparer who prepares a return or claim for refund that contains an unreasonable position and the return preparer knew (or reasonably should have known) of the position;

B.   Engaging in conduct subject to penalty under 26 U.S.C. § 6694(b), which penalizes a return preparer who, among other conduct, recklessly or intentionally disregards IRS rules or regulations;

C.   Engaging in conduct subject to penalty under 26 U.S.C. § 6695, which penalizes a return preparer who, among other conduct, fails to furnish a copy of a return to the customer or fails to be diligent in determining eligibility for the EITC; and

D.   Engaging in any other fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws. *See* 26 U.S.C. § 7407(b)(1)(D).

100.    Franklin continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. § 6694(b) by preparing returns that he knew understated his customers' federal tax liabilities.

101.    Franklin understated his customers' correct tax liabilities through his failure to

16

conduct the required due diligence and, therefore, improperly claimed deductions and credits, including the EITC, on behalf of his customers, and engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695(g).

102.    Franklin, by using taxpayers' identities without consent to fraudulently prepare and file returns claiming refunds, has engaged in fraudulent or deceptive conduct that substantially interferes with the proper administration of the internal revenue laws. 26 U.S.C. § 7407(b)(1)(D).

103.    Injunctive relief is appropriate to prevent this misconduct because, absent an injunction, Franklin is likely to continue preparing and filing false or fraudulent federal income tax returns of the type described in this complaint, and listing improper or fabricated and fraudulent earnings, expenses, filing statuses, deductions, and credits on returns he prepares.

104.    Further, such continual and repeated violations of the internal revenue laws, including the audacious use of fictitious Schedule C businesses, bogus claims for education credits, fraudulent EITC claims, and ID theft underscore that a narrow injunction prohibiting only specific conduct would be insufficient to prevent Franklin's interference with the proper administration of the internal revenue laws.

105.    If he is not fully enjoined, Franklin is likely to continue to prepare and file false tax returns, causing economic harm to the United States, requiring the United States to commit additional resources to the examination of Franklin's customers' returns, and exposing such customers to significant liabilities that include penalties and interest.

106.    Franklin should be permanently enjoined under 26 U.S.C. § 7407 from acting as a tax return preparer.  His repeated and continual conduct subject to injunction under 26 U.S.C. § 7407 demonstrates that a narrower injunction prohibiting specific misconduct would be

insufficient to prevent his interference with the proper administration of the internal revenue laws.

## COUNT II – Injunction under 26 U.S.C. § 7408

107.    The United States incorporates by reference the allegations in paragraphs 1 through 106.

108.    26 U.S.C. § 7408 authorizes a district court to enjoin any person from engaging in conduct subject to penalty under 26 U.S.C. § 6701 if injunctive relief is appropriate to prevent recurrence of such conduct.

109.    26 U.S.C. § 6701 penalizes any person who aids or assists in, procures, or advises with respect to the preparation or presentation of a federal tax return, refund claim, or other document knowing (or having reason to believe) that it will be used in connection with any material matter arising under the internal revenue laws and knowing that if it is so used, it will result in an understatement of another person's tax liability.

110.    Franklin prepared tax returns he knew would understate his customers' correct tax liabilities.  Franklin knowingly prepared federal tax returns claiming false or inflated deductions, EITCs, and education credits.  Franklin knowingly created fictitious Schedule C businesses and reported fabricated profits or losses.  Franklin is thus subject to penalty under 26 U.S.C. § 6701(a).

111.    Franklin has engaged in this conduct in preparing thousands of returns over multiple years.  If the Court does not enjoin Franklin, he is likely to continue to engage in conduct subject to penalty under 26 U.S.C. § 6701.  Injunctive relief is therefore appropriate under 26 U.S.C. § 7408.

## COUNT III – Injunction under 26 U.S.C. § 7402

112.   The United States incorporates by reference the allegations in paragraphs 1 through 111.

113.   26 U.S.C. § 7402 authorizes courts to issue injunctions "as may be necessary or appropriate for the enforcement of the internal revenue laws."  The remedies available to the United States under the statute "are in addition to and not exclusive of any and all other penalties." 26 U.S.C. § 7402(a).

114.   Franklin, through the actions described above, has engaged in conduct that substantially interferes with the administration and enforcement of the internal revenue laws.  He is likely to continue to engage in such conduct unless enjoined.

115.   Franklin's conduct caused irreparable injury to the United States and an injunction under 26 U.S.C. § 7402(a) is necessary and appropriate.  If Franklin is not enjoined from preparing tax returns, the United States will suffer irreparable injury by erroneously providing tax refunds, which the United States may never recover, to persons not entitled to receive them and by taxpayers not reporting and paying the correct amount of taxes.

116.   Unless Franklin is enjoined, the IRS will have to continue to devote substantial time and resources to identify and locate his customers, and then examine those customers' tax returns and property records.

117.   Enjoining Franklin is in the public interest because an injunction should stop his illegal conduct and the harm it causes the United States and his customers.

118.   The Court should therefore order injunctive relief under 26 U.S.C. § 7402(a).

16235655.1

**Relief Sought**

WHEREFORE, the United States of America requests the following relief:

A.   The Court find that Franklin has continually and repeatedly engaged in conduct subject to penalty under 26 U.S.C. §§ 6694 and 6695 and other deceptive conduct that substantially interferes with the proper administration of the tax laws; that injunctive relief is appropriate under 26 U.S.C. § 7407 to prevent recurrence of that conduct; and that injunctive relief limited to prohibiting such conduct would not be sufficient to prevent Franklin's interference with the proper administration of the Internal Revenue Code, and bar him from acting as a federal tax return preparer or operating any business that prepares federal tax returns;

B.   The Court find that Franklin has engaged in conduct subject to penalty under 26 U.S.C. § 6701, and that injunctive relief is appropriate under 26 U.S.C. § 7408 to prevent recurrence of that conduct;

C.   The Court find that Franklin has engaged in conduct that interferes with the enforcement of the internal revenue laws, and that injunctive relief against him and anyone acting in concert with him is appropriate to prevent the recurrence of that conduct pursuant to the Court's inherent equity powers and 26 U.S.C. § 7402(a);

D.   The Court, pursuant to 26 U.S.C. §§ 7402, 7407, and 7408, enter a permanent injunction prohibiting Franklin from:

1.   acting as a federal tax return preparer or requesting, assisting in, or directing the preparation or filing of federal tax returns, amended returns, or other related documents or forms for any person or entity other than himself;

2.   owning, operating, managing, working in, investing in, providing capital or loans to, receiving fees or remuneration from, controlling, licensing, consulting with, or franchising a tax return preparation business or customer list;

20

16235655.1

    3.   maintaining, transferring, assigning, holding, using, or obtaining a PTIN or EFIN; and

    4.   engaging in any conduct that substantially interferes with the proper administration and enforcement of the internal revenue laws;

E.    The Court, pursuant to 26 U.S.C. § 7402, enter an injunction requiring Franklin, at his own expense, to:

    1.   immediately and permanently close all tax return preparation stores that Franklin owns through any entity, whether those stores do business as J Pro Tax Services or under any other name;

    2.   within 30 days of the Court's order, send by U.S. mail or email a copy of the final injunction entered against him in this action to each person for whom he prepared federal tax returns or any other federal tax forms since January 1, 2013; and

    3.   within 30 days of the Court's order, file with the Court a sworn certificate evidencing his compliance with paragraphs 1-4 above;

F.    The Court, without further proceedings, authorize the IRS to immediately revoke any EFIN and PTIN held by, assigned to, or used by Franklin;

G.    The Court enter an order allowing the United States to monitor Franklin's compliance with the injunction and to engage in post-judgment discovery in accordance with the Federal Rules of Civil Procedure in order to monitor compliance with the Court's injunction; and

H.    The court retain jurisdiction over Franklin and over this action to enforce any permanent injunction entered; and

I.    The Court grant the United States such other and further relief as the Court deems appropriate.

//

//

//

21

16235655.1

Dated: February 16, 2018

D. MICHAEL HURST
United States Attorney

RICHARD E. ZUCKERMAN
Principal Deputy Assistant Attorney General

*/s/ Julian T. A. Lee*
JULIAN T. A. LEE
NY Bar Number: 4523684
Trial Attorney, Tax Division
U.S. Department of Justice
P.O. Box 7238
Washington, D.C.  20044
202-307-6140 (o)
202-514-6770 (f)
Julian.Lee@usdoj.gov
*Attorney for the United States*

16235655.1

# CIVIL COVER SHEET

5:18-cv-19-DCB-MTP

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| United States of America | Jeremiah Franklin, individually and d/b/a J Pro Tax Services |

| (b) County of Residence of First Listed Plaintiff   n/a | County of Residence of First Listed Defendant   n/a |
|---|---|
| *(EXCEPT IN U.S. PLAINTIFF CASES)* | *(IN U.S. PLAINTIFF CASES ONLY)* |
| | NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED. |

| (c) Attorneys *(Firm Name, Address, and Telephone Number)* | Attorneys *(If Known)* |
|---|---|
| Julian T. A. Lee<br>US Dept. of Justice Tax Division, PO Box 7238<br>Washington, DC 20044 (202) 307-6140 | n/a |

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☒ 1 U.S. Government
  Plaintiff

☐ 2 U.S. Government
  Defendant

☐ 3 Federal Question
  *(U.S. Government Not a Party)*

☐ 4 Diversity
  *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - Product Liability | ☐ 690 Other | ☐ 423 Withdrawal 28 USC 157 | ☐ 376 Qui Tam (31 USC 3729(a)) |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 367 Health Care/ Pharmaceutical | | | ☐ 400 State Reapportionment |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | Personal Injury Product Liability | | **PROPERTY RIGHTS** | ☐ 410 Antitrust |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | ☐ 368 Asbestos Personal Injury Product Liability | | ☐ 820 Copyrights | ☐ 430 Banks and Banking |
| ☐ 151 Medicare Act | ☐ 340 Marine | | | ☐ 830 Patent | ☐ 450 Commerce |
| ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans) | ☐ 345 Marine Product Liability | **PERSONAL PROPERTY** | **LABOR** | ☐ 835 Patent - Abbreviated New Drug Application | ☐ 460 Deportation |
| | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | ☐ 710 Fair Labor Standards Act | ☐ 840 Trademark | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 371 Truth in Lending | ☐ 720 Labor/Management Relations | **SOCIAL SECURITY** | ☐ 480 Consumer Credit |
| ☐ 160 Stockholders' Suits | ☐ 360 Other Personal Injury | ☐ 380 Other Personal Property Damage | ☐ 740 Railway Labor Act | ☐ 861 HIA (1395ff) | ☐ 490 Cable/Sat TV |
| ☐ 190 Other Contract | ☐ 362 Personal Injury - Medical Malpractice | ☐ 385 Property Damage Product Liability | ☐ 751 Family and Medical Leave Act | ☐ 862 Black Lung (923) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | | | ☐ 790 Other Labor Litigation | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 791 Employee Retirement Income Security Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| | | | | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | | | ☐ 895 Freedom of Information Act |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | **Habeas Corpus:** | | **FEDERAL TAX SUITS** | ☐ 896 Arbitration |
| ☐ 220 Foreclosure | ☐ 441 Voting | ☐ 463 Alien Detainee | | ☒ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | ☐ 510 Motions to Vacate Sentence | | ☐ 871 IRS—Third Party 26 USC 7609 | |
| ☐ 240 Torts to Land | ☐ 443 Housing/ Accommodations | ☐ 530 General | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other | **Other:** | ☐ 462 Naturalization Application | | |
| | ☐ 448 Education | ☐ 540 Mandamus & Other | ☐ 465 Other Immigration Actions | | |
| | | ☐ 550 Civil Rights | | | |
| | | ☐ 555 Prison Condition | | | |
| | | ☐ 560 Civil Detainee - Conditions of Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☐ 1 Original Proceeding

☐ 2 Removed from State Court

☐ 3 Remanded from Appellate Court

☐ 4 Reinstated or Reopened

☐ 5 Transferred from Another District *(specify)*

☐ 6 Multidistrict Litigation - Transfer

☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
26 U.S.C. 7402, 7407, and 7408

Brief description of cause:
Complaint to permanently enjoin tax preparer

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $

CHECK YES only if demanded in complaint:

JURY DEMAND:   ☐ Yes   ☒ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____   DOCKET NUMBER _____

| DATE | SIGNATURE OF ATTORNEY OF RECORD |
|---|---|
| 02/16/2018 | /s/ Julian T. A. Lee |

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

# INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

## Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.(a)**   **Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

   **(b)**   **County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

   **(c)**   **Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.Cv.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.
United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.
United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.
Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.
Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; **NOTE: federal question actions take precedence over diversity cases.**)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If there are multiple nature of suit codes associated with the case, pick the nature of suit code that is most applicable. Click here for: Nature of Suit Code Descriptions.

**V.**   **Origin.** Place an "X" in one of the seven boxes.
Original Proceedings. (1) Cases which originate in the United States district courts.
Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.
Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.
Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.
Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.
Multidistrict Litigation – Transfer. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407.
Multidistrict Litigation – Direct File. (8) Check this box when a multidistrict case is filed in the same district as the Master MDL docket.
**PLEASE NOTE THAT THERE IS NOT AN ORIGIN CODE 7.** Origin Code 7 was used for historical records and is no longer relevant due to changes in statue.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.** Example: U.S. Civil Statute: 47 USC 553   Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.
Demand. In this space enter the actual dollar amount being demanded or indicate other demand, such as a preliminary injunction.
Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases, if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.